UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LIBERTY COMMUNITY ASSOCIATES,**<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF PLAINFIELD, et al.,**<br><br>Defendants. | **Civil Action No. 15-3247 (KM)**<br><br>**OPINION AND ORDER** |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Defendant Bank of New York Mellon Corporation ("BNYM" or the "Trustee") for leave to file an Amended Answer and Third Party Complaint [Dkt. No. 68]. Plaintiff Liberty Community Associates ("Plaintiff") opposes the portion of BNYM's motion which seeks to amend its Answer to assert an additional affirmative defense [Dkt. No. 71]. The portion of BNYM's motion seeking to file a Third Party Complaint naming additional parties is unopposed. For the reasons set forth below, BNYM's motion [Dkt. No. 68] is **GRANTED.**

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's Complaint in this matter arises out an arrangement between the parties regarding an apartment complex, referred to as Liberty Village Apartments, which is located in Plainfield, New Jersey (the "Complex"). The Complex consists of ninety-six units reserved exclusively as affordable housing available for rental to elderly, handicapped and/or low income individuals who satisfy the eligibility requirements established by the United States Department of Housing and Urban Developments ("HUD") under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f.

1

In order to comply with various requirements imposed upon Plaintiff by virtue of its "public purpose" in developing the Complex, Plaintiff entered into a Lease and Management Agreement (the "Management Agreement") with the Housing Authority of Plainfield (the "Housing Authority"), an instrumentality of Defendant City of Plainfield ("Plainfield" or the "City"). Compl. ¶ 10. Pursuant to the Management Agreement, the Housing Authority was to "enter into possession and control of the [Complex] . . . [and] use its best efforts in the management of the [Complex]." *Id.* at ¶ 14. In exchange for its management of the Complex, the Housing Authority was to be paid a "basic annual management fee" in the amount of 5% of the contract rents collected, as well as an "incentive fee" based upon the Housing Authority's fulfillment of certain conditions tied to its management of the Complex. *Id.* at ¶ 15. In connection with the execution of the Management Agreement, the Plainfield Housing Finance Corporation ("PHFC") was organized. *Id.* at ¶ 16.

Thereafter, Plaintiff and PHFC entered into various "lending arrangements" involving mortgage loans and the issuance of bonds. *Id.* at ¶ 17. In conjunction with the financing "arrangements" between Plaintiff and PHFC, PHFC entered into an Agreement of Trust (the "Trust Agreement") with BNYM's predecessor, National Community Bank of New Jersey, on December 1, 1982. *Id.* at ¶ 18. According to Plaintiff, proceeds from the issuance of bonds used to fund Plaintiff's project were payable to the Trustee to be held in trust, and the Trustee became the assignee and/or obligee of mortgage loans and other debts incurred by Plaintiff. *Id.* at ¶ 19. Plaintiff "expressly approved, consented to and agreed to be bound by the Trust Agreement." *Id.* at ¶ 20.

As part of Plaintiff's development of the Complex, Plaintiff and the City entered into a "Payment in Lieu of Taxes Agreement" (the "PILOT Agreement") on February 20, 1980. *Id.* at ¶

21. The PILOT Agreement provided that rather than Plaintiff remitting traditional property taxes to the City, Plaintiff would make a payment to the City in the amount of 6.28% of the annual "gross shelter rents" received Plaintiff during the relevant time period. *Id.* at ¶ 24. In order to determine the amount of the PILOT payments, the Housing Authority was required to retain the services of a certified public accountant to prepare annual financial statements for submission to the City. *Id.* at ¶ 39. Upon receipt of the financial statements, the City would calculate the PILOT amount due and notify the Housing Authority of that amount. *Id.* at ¶ 40. The Housing Authority would then notify the Trustee of the PILOT amount to be remitted to the City. *Id.* at ¶ 40.

Upon completion of the Complex, the Housing Authority began renting the apartment units. Pursuant to the Management Agreement, the Housing Authority was to remit all revenue from the Complex, including all rental proceeds, directly to the Trustee. *Id.* at ¶ 37. Upon receipt of the funds from the Complex, the Trustee was required to place the transferred proceeds into various "funds," including a "Tax Payment Fund" established, in part, to satisfy Plaintiff's payments to the City under the PILOT Agreement. *Id.* at ¶ 38.

By virtue of the method by which the PILOT payments were calculated by the Housing Authority and the City and then remitted by the Trustee to the City at the direction of the Housing Authority, Plaintiff claims it had "absolutely no involvement in the PILOT payment process . . . [and] was essentially powerless to review and/or challenge the PILOT payment process. *Id.* at ¶ 41-42. In light of Plaintiff's lack of oversight and control over the PILOT payments, the Trust Agreement provided for "a macro-level, expenditure review mechanism" in the form of an annual budget that the Trustee was required to prepare and present to Plaintiff for approval on an annual basis (the "Budget Obligation"). *Id.* at ¶ 44. Unless and until the Budget

Obligation was satisfied, the Trustee was "expressly prohibited from remitting any payment of any kind on behalf of Plaintiff." *Id.* at ¶ 45.

According to Plaintiff, despite its repeated requests, the Trustee failed to satisfy its Budget Obligation in most, if not all, years from the inception of the Complex through 2014. *Id.* at ¶ 46. Plaintiff claims that despite the Trustee's repeated failure to meets its Budget Obligation, the Trustee remitted numerous payments to various vendors on Plaintiff's behalf, including the annual PILOT payments. *Id.* at ¶ 48. Plaintiff further asserts that in addition to being improperly remitted by the Trustee, the PILOT payments were improperly calculated and collected by the City resulting in overpayment by Plaintiff of approximately $850,000.00 in PILOT payments to the City. *Id.* at ¶ 50-53.

In 2013, Plaintiff transferred its ownership of the Complex to a third party "better-suited" to own and operate the Complex. *Id.* at ¶ 55. Given the various regulations governing the Complex, numerous approvals were required before the transfer could be completed. *Id.* at ¶ 56. One of the approvals required was that of that City, and according to Plaintiff, the City conditioned its approval of the transfer upon Plaintiff's acquiescence to various modifications of the PILOT Agreement which would benefit the City. *Id.* at ¶ 60. The conditions imposed by the City in exchange for approval of the transfer included an increase in the PILOT Payment from the previous amount of 6.28%, to 10%, which resulted in a corresponding reduction in the purchase price previously negotiated by Plaintiff for the transfer of the Complex. *Id.* at ¶ 61-63.

Based upon Defendants' purported violations of the PILOT Agreement and the Trust Agreement, Plaintiff filed its Complaint in this matter on May 8, 2015, stating causes of action for: (1) Breach of Contract; (2) violations of 28 U.S.C. § 1983; (3) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*; (4) Unjust

Enrichment; (5) Fraud; (6) Breach of Fiduciary Duty; (7) Negligence; and (8) Breach of the Implied Covenant of Good Faith & Fair Dealing. *See* Dkt. No. 1. On July 1, 2015, BNYM filed an Answer to Plaintiff's Complaint and a Third Party Complaint against PHFC. *See* Dkt. No. 11. On March 22, 2017, BNYM voluntarily dismissed its claims against PHFC. *See* Dkt. No. 70.

BNYM now seeks to file an Amended Answer and Third Party Complaint. First, BNYM seeks to amend its Answer to assert an additional affirmative defense. The proposed Twelfth Affirmative Defense seeks to plead the entry of a prior settlement agreement (the "Settlement Agreement" as a bar to Plaintiff's claims in this matter against BNYM. The Settlement Agreement is confidential and resulted from an action filed by Plaintiff in 2011 against the Housing Authority and PHFC in the Superior Court of New Jersey, Union County, regarding a dispute over the termination of the Management Agreement (the "State Action"). The Settlement Agreement contains certain releases between the parties in the State Action which BNYM claims bar Plaintiff's claims against it in this action.

Secondly, BNYM seeks to file a Third Party Complaint against Simontacchi, Miller & DeAngelis, P.A., Simontacchi and Company, P.A., Joseph Simontacchi, William B. O'Neill, Cohn Reznick, LLP, and BDO USA, LLP. The parties which BNYM seeks to include in its Third Party Complaint were accountants retained to audit Plaintiff's finances and were the individuals BNYM claims were responsible for providing the calculations and information utilized in determining the amount of Plaintiff's PILOT payments. According to BNYM, these proposed Third Party Defendants are responsible for any error made in calculating Plaintiff's PILOT payments.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In addition, "[t]he Third Circuit has consistently emphasized the liberal approach to pleading embodied by Rule 15.*" Endo Pharma v. Mylan Techs Inc.*, 2013 U.S. Dist. LEXIS 32931, at *4 (D. Del. Mar. 11, 2013). The Court should only deny leave when these factors "suggest that amendment would be 'unjust'. . . ." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

Initially, the Court notes that the portion of BNYM's motion seeking leave to file a Third Party Complaint naming additional parties is unopposed and is therefore **GRANTED**. The Court will now address the portion of BNYM's motion which seeks leave to amend its Answer to add an affirmative defense based upon the Settlement Agreement from the State Action.

According to the parties, the existence of the Settlement Agreement and its possible effect on Plaintiff's claims against PHFC and BNYM in this matter was first raised by PHFC in a letter submitted to the Court on January 26, 2016.[1] The Court addressed the disclosure of the

---

[1] The January 26, 2016 letter referenced by the parties was not filed on the electronic docket for this case and was not submitted by either party in connection with the present motion.

Settlement Agreement during a telephone conference held on the record with the parties on February 5, 2016, and entered an Order, also dated February 5, 2016, directing the release of the Settlement Agreement pursuant to a Confidentiality Agreement to be executed by the parties by no later than February 15, 2016. *See* Dkt. No. 33. It is unclear when or if the Settlement Agreement was ever formally released, and according to Plaintiff, despite PHFC's stated intention to produce the Settlement Agreement in support of its assertion that the terms of the Settlement Agreement barred Plaintiff's claims against PHFC and BNYM in this action, PHFC never produced the Settlement Agreement nor did BNYM ever make a formal request for the Settlement Agreement to be produced. Dkt. No. 71 at p. 7.

Pursuant to an indemnification agreement, PHFC assumed the defense of BNYM in this matter, and on December 13, 2016, new counsel substituted for BNYM. *See* Dkt. No. 54. Upon the appearance of BNYM's new counsel, BNYM filed a letter requesting leave to file a motion for summary judgment based upon the assertion that the language of the releases contained in the Settlement Agreement barred Plaintiff's claims against BNYM in this action. *See* Dkt. No. 55. Plaintiff objected to BNYM's request to file a dispositive motion, arguing that the terms of the Settlement Agreement and any releases contained therein applied solely to the parties in the State Action, in which BNYM had no involvement, and that to the extent that any factual questions did exist as to the intent of the parties in the drafting of the Settlement Agreement, "further discovery certainly would be necessary to explore such issues." Dkt. No. 59 at p. 2. The Court denied BNYM's request to file a motion for summary judgment during a telephone conference with the parties on January 12, 2017. BNYM filed the present motion on March 13, 2017. *See* Dkt. No. 68.

In opposition to BNYM's motion, Plaintiff asserts that BNYM's delay in moving for the presently requested relief was undue and would "result in a waste of time and resources for the parties and the Court." Dkt. No. 71 at p. 10. Plaintiff further claims that BNYM's proposed amendment adding a defense under the Settlement Agreement would cause prejudice and would be futile because "the terms of the Settlement Agreement were strictly limited to those issues that were disputed in the [State Action] and the parties involved in [the State Action]." *Id*.

First, the Court addresses Plaintiff's argument of undue delay. A court may deny a motion to amend if the movant's delay in seeking the amendment is undue. *Foman,* 371 U.S. at 182. "The mere passage of time does not require that a motion to amend . . . be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001) (internal citation omitted). However, if the delay places an unwarranted burden on the court or on the opposing party, then denial based on delay is appropriate. *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984).

In support of its assertion that BNYM unduly delayed in seeking the present amendment, Plaintiff claims that BNYM has been "aware of this purported 'defense' under the Settlement Agreement since at least January 26, 2016" when PHFC raised the issue of the releases contained in the Settlement Agreement to the Court, and accordingly, that BNYM waited "a full year" before seeking leave to amend. Dkt. No. 71 at p. 9-10. While the Court agrees that the presence of the Settlement Agreement and its possible effect on Plaintiff's claims in this matter was raised in January of 2016, by Plaintiff's own representation it is unclear when, if ever, the complete Settlement Agreement was produced to BNYM. *See* Dkt. No. 71 at p. 7. Furthermore, even if BNYM was provided with the Settlement Agreement sometime in early 2016, a significant part of 2016 was spent resolving the issue of PHFC's indemnification of BNYM, and once the issue

of BNYM's defense was resolved, it appears to the Court that BNYM promptly raised the issue of the Settlement Agreement to the Court.[2]

Additionally, although Plaintiff claims that the proposed amendment would burden the parties and the Court with extensive discovery related to the Settlement Agreement, the discovery conducted by the parties thus far has already touched upon the Settlement Agreement, and regardless of BNYM's inclusion of the Settlement Agreement in its Answer, discovery will have to be extended and expanded by virtue of the addition of new parties to this action by BNYM's Third Party Complaint, to which Plaintiff does not object. Accordingly, the Court finds that BNYM has not unduly delayed in seeking the present amendment and that permitting the amendment will not place any unwarranted burden on Plaintiff or the Court.

Next, the Court turns to Plaintiff's claim of prejudice. Plaintiff states, without explanation or support, that it will be prejudiced by BNYM's proposed amendment. "Prejudice," for purposes of determining whether to allow the proposed amendments, involves serious impairment of the non-movant's ability to present its case. *Harter v. GAF Corp.,* 150 F.R.D. 502, 509 (D.N.J. 1993). Incidental prejudice to the non-moving party is not a sufficient basis for denial of an amendment; prejudice becomes "undue" only when the non-moving party shows that it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered. *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of Virgin Islands, Inc.,* 663 F.2d 419, 426 (3d Cir. 1981); *see also DiLoreto v. Borough of Oaklyn,* 744 F.Supp. 610, 615 (D.N.J. 1990). Prejudice can also be caused in a number of different circumstances, such as when the amended pleading will "(1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2)

---

[2] The Court notes that BNYM filed its letter requesting leave to file a motion for summary judgment based upon the Settlement Agreement the same day that new counsel substituted for BNYM.

significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." *Textron Fin.-New Jersey, Inc. v. Herring Land Grp., LLC,* No. 06–2585, 2009 U.S. Dist. LEXIS 19539, at *12–13, 2009 WL 690933 (D.N.J. Mar. 11, 2009) (citing *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004)). Similarly, prejudice may result when the amendment would force a party to change their litigation tactics or case theory. *Stallings v. IBM Corp.,* No. 08–3121, 2009 U.S. Dist. LEXIS 81963, at *49, 2009 WL 2905471 (D.N.J. Sept. 8, 2009) (citing *Kiser v. Gen. Elec. Corp.,* 831 F.2d 423, 428 (3d Cir. 1987)).

Plaintiff does not include any discussion of the prejudice it will purportedly suffer if BNYM is allowed to amend its Answer and it does not appear to the Court that any of the above considerations are implicated by BNYM's proposed amendment. To the contrary, it appears to the Court that the addition of the proposed affirmative defense will allow the parties to obtain discovery necessary for the presentation and resolution of full and complete arguments regarding the applicability of the Settlement Agreement to Plaintiff's claims in this matter. Accordingly, the Court finds that allowing the presently sought amendment will not cause any party in this matter to suffer undue prejudice.

Finally, the Court turns to Plaintiff's assertion that BNYM's proposed amendment is futile. An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted). In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). Under a Rule 12(b)(6) analysis, the question is not whether the movant will ultimately prevail, and detailed factual allegations are not necessary to survive such a motion. *Antoine v. KPMG*

*Corp.,* 2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. *Meadows v. Hudson County Bd. of Elections,* 2006 WL 2482956, at *3 (D.N.J. Aug. 24, 2006).

Plaintiff claims that the proposed amendment would be futile because the terms of the Settlement Agreement and any releases contained therein were strictly limited to the issues and parties in the State Action. While Plaintiff may ultimately prevail on its argument that the Settlement Agreement has no bearing on its claims against BNYM in this matter, the Court agrees with Plaintiff's previous statement, made in its letter in opposition to BNYM's request to file a motion for summary judgment based upon the Settlement Agreement, that "to the extent that any factual questions exist with respect to the intent of the parties in drafting and/or executing [the Settlement Agreement], further discovery certainly would be necessary to explore such issues." Dkt. No. 59 at p. 2. The Court cannot at this juncture, before the parties have had the opportunity to fully explore the drafting and terms of the Settlement Agreement, conclude that BNYM's defense under the terms of the Settlement Agreement is legally insufficient on its face. Based upon the foregoing, BNYM's motion for leave to file an Amended Answer to include a Twelfth Affirmative Defense which pleads the entry of the Settlement Agreement as a bar to Plaintiff's claims against BNYM in this matter is **GRANTED**.

### III. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 10th day of October, 2017,

**ORDERED** that Defendant BNYM's motion for leave to file an Amended Answer and Third Party Complaint [Dkt. No. 68] is **GRANTED**; and it is further

**ORDERED** that Plaintiff shall file its Amended Answer and Third Party Complaint within **seven (7) days** from the date of this Order.

    s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**