UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LCA GP, LLC, LCA LP, LLC and ANODES PARTNERS LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF PLAINFIELD and THE BANK OF NEW YORK MELLON CORPORATION, as Trustee,<br><br>　　　　　Defendants,<br><br>　and<br><br>THE BANK OF NEW YORK MELLON,<br><br>　　　　　Third-Party Plaintiff,<br><br>　v.<br><br>SIMONTACCHI, MILLER & DEANGELIS, P.A., SIMONTACCHI AND COMPANY, P.A., JOSEPH SIMONTACCHI, WILLIAM B. O'NEILL, COHN REZNICK, LLP, and BDO USA, LLP,<br><br>　　　　　Third-Party Defendant. | Civil Action<br><br>Case No.: 2:15-cv-03247-KM-JBC |

**AMENDED COMPLAINT**

　　　　Plaintiffs LCA GP, LLC, LCA LP, LLC and Anodes Partners LLC (collectively formerly known as Liberty Community Associates LP, and hereinafter "Plaintiff" or the "Partnership")[1]

---

[1] As per an Assignment and Assumption of Partnership Interest dated December 21, 2017, annexed hereto as **Exhibit H**, the entity known as Liberty Community Associates LP has assigned all of its assets as well as all of its rights and interests with respect to the above-

1

by and through undersigned counsel, for their Complaint against defendants City of Plainfield, Union County, New Jersey ("Plainfield"), and The Bank of New York Mellon Corporation, as Trustee ("BNY Mellon" or the "Trustee") (collectively, "Defendants"), aver as follows:

## PARTIES

1. Plaintiff was organized as a New Jersey limited partnership organized under the provisions of the Limited-Dividend Non-Profit Housing Corporations or Associations Law (the "Limited-Dividend Law") with an address of c/o Liberty Community Associates, 745 Fifth Avenue, 4th Floor, New York, New York 10151.

2. Of Plaintiff's three partners, the General Partner and one Limited Partner are domiciled in the State of New York, and the remaining Limited Partner is domiciled in the State of Florida.

3. Defendant Plainfield is a municipal corporation located in Union County, New Jersey.

4. Defendant BNY Mellon is incorporated in the State of Delaware, with an address of 1 Wall Street, New York, New York 10286.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 18 U.S.C. § 1964, and 28 U.S.C. §§ 1332, 1343 and 1367.

6. Venue is appropriate in this Judicial District under 28 U.S.C. § 1391(b) because the events giving rise to the claims set forth in this Complaint occurred in New Jersey.

## FACTUAL ALLEGATIONS

### The Project

7. This action concerns the unauthorized and unlawful conduct of Defendants in the

---

captioned action to LCA GP, LLC (as General and Limited Partner), LCA LP, LLC (as Limited

context of the parties' involvement with certain real property located in Plainfield, New Jersey, commonly known as Liberty Village Apartments (the "Property" or the "Apartments").

8. The Apartments consist of ninety-six (96) units reserved exclusively as affordable housing available for rental to elderly, handicapped and/or low-income individuals who satisfy the eligibility requirements established by the United States Department of Housing and Urban Development ("HUD") under Section 8 of the United States Housing Act of 1937 (the "US Housing Act").

9. Initially formed in the early 1980s, Plaintiff's stated corporate purpose was to acquire the Property, and then construct, develop and hold the Apartments available for rental to qualifying persons (the "Project"). Annexed hereto as **Exhibit A** is a true and correct copy of the Amended[2] Restated Agreement of Limited Partnership of Liberty Community Associates (the "Partnership Agreement"). Annexed hereto as **Exhibit B** is a true and correct copy of the Amended and Restated Certificate of Limited Partnership of Liberty Community Associates (the "Partnership Certificate").

10. Given the nature of the Project, Plaintiff's governing documents expressly acknowledge it was "organized to serve a public purpose and use . . . [of] providing for and making possible the clearance, planning, development or redevelopment of blighted areas." See Partnership Agreement (Ex. A at p. 4); see also Partnership Certificate (Ex. B at p. 3).

11. As a consequence of its public purpose, Plaintiff is a heavily-regulated entity which is "at all times subject to the supervision and control" of the predecessor entity to the current New Jersey Housing and Mortgage Finance Agency (the "HMFA"). Id. at 5; at 4.

12. In particular, Plaintiff's governing documents contain the following enumerated

---

Partner) and Anodes Partners LLC (as Limited Partner).

provisions explaining HMFA's powers and role *vis-à-vis* the Partnership/Project:

    a.    The HMFA had review and approval authority for "all sales, including sales of Partnerships interests, charges, capital structure, rents, tenant occupancy, method of operation and rate of return . . . pursuant to the provisions of the [Limited-Dividend Law]";

    b.    Plaintiff was charged with managing the Project in a manner satisfactory to the HMFA, and therefore Plaintiff was required to "enter into a management contract, satisfactory in form and substance to the [HMFA], with a managing agent approved the [HMFA]";

    c.    Upon request, Plaintiff was required to provide "specific answers to [virtually any] question" posed by the HMFA in relation to the Project; and

    d.    The HMFA was entitled to dictate the specific manner which Plaintiff kept its books. Id. at 5-6; at 4-5.

13.    In complying with its mandate to obtain a managing agent suitable to the HMFA, Plaintiff entered into a Lease and Management Agreement (the "Management Agreement"[3]) on December 1, 1982 with an instrumentality of defendant Plainfield, the Housing Authority of Plainfield (the "HAP"). Annexed hereto as **Exhibit C** is a true and correct copy of the Management Agreement between Plaintiff and HAP.

14.    Pursuant to the Management Agreement, HAP was "to enter into possession and control of the Project[,] . . . [and] use its best efforts in the management of the Project." See Management Agreement (Ex. C), at pp. 1, 31.

---

[2] The Partnership was organized on January 24, 1980, but its composition was modified on December 1, 1982 in connection with its acquisition of the Property. For an explanation of the reason for the 1982 amendment, see Partnership Agreement, (Ex. A, at pp. 1-3).

[3] Reference herein to the "Management Agreement" shall be deemed to encompass any amendments and/or modifications thereto.

15. For its services, HAP was entitled to a "basic annual management fee in the amount of five percent (5%) of the Contract Rents actually collected, [and also] . . . an incentive fee in addition to the Basic Fee" upon satisfaction of certain enumerated conditions tied to its performance in discharging its managerial duties. Id. at 28-30.

16. In connection with the execution of the Management Agreement, the Plainfield Housing Finance Corporation (the "Finance Corp") was "organized . . . for the purpose of financing the costs of the Project," and HAP designated the Finance Corp as its "instrumentality" pursuant to the US Housing Act. Id. at 2.

17. Thereafter, Plaintiff and the Finance Corp entered into various lending arrangements involving mortgage loans and/or the issuance of bonds (the "Project Funding Mechanism"). Id. at 3.

18. In conjunction with establishing the Project Funding Mechanism, the Finance Corp entered into an Agreement of Trust (the "Trust Agreement"[4]) with the predecessor trustee to defendant BNY Mellon (the "Trustee"[5]) on December 1, 1982. Annexed hereto as **Exhibit D** is a true and correct copy of the Trust Agreement.

19. Proceeds from the issuance of bonds in implementing the Project Funding Mechanism were payable to the Trustee to be held in trust, and the Trustee became the assignee and/or obligee of mortgage loan(s) and other Project-related indebtedness of Plaintiff. See Trust Agreement (Ex. D), at p. 4.

20. Plaintiff expressly approved, consented to and agreed to be bound by the Trust Agreement. See Trust Agreement (Ex. D), at pp. 96-97.

---

[4] Reference herein to the "Trust Agreement" shall be deemed to encompass any amendments and/or modifications thereto.

[5] Reference herein to the "Trustee" shall be deemed to include BNY Mellon and its predecessor in interest.

### *THE PILOT AGREEMENT*

21.  In connection with Plaintiff's acquisition and development of the Property, Plaintiff and defendant Plainfield entered into a Payment in Lieu of Taxes Agreement (the "PILOT Agreement"[6]) on February 20, 1980.  Annexed hereto as **Exhibit E** is a true and correct copy of the PILOT Agreement.

22.  The Agreement was made pursuant to the authority and provisions of the Limited-Dividend Law,[7] with a stated term of fifty (50) years.  See PILOT Agreement (Ex. E), at p. 1.

23.  In short, the PILOT Agreement called for Plaintiff to remit annual PILOT payments to defendant Plainfield as a substitute for traditional property taxes. Id. at 1-2.

24.  The PILOT payment amount was computed as "6.28 percent of the annual gross shelter rents obtained from the development determined in the manner set forth in Exhibit 'A.'" Id. at 2.

25.  According Exhibit A to the PILOT Agreement, the first step in calculating the annual PILOT payment is to ascertain the amount of "gross shelter rent" received by the Partnership during the relevant time period. Id. at 6.

26.  The term "gross shelter rent" is not defined in the PILOT Agreement.

27.  Notwithstanding, at the time the parties entered into the PILOT Agreement, the Limited-Dividend Law included the following definition: "The term 'gross shelter rent' shall mean the gross rent or carrying charge *less the cost of utilities furnished by the project*.  These utilities shall include gas and electricity if supplied by the project; cost of heating fuel; cost of water supplied and sewage charges, if any." N.J.S.A. § 55:16-3(11) (emphasis added).

---

[6] Reference herein to the "PILOT Agreement" shall be deemed to encompass any amendments and/or modifications thereto.

[7] Although the Limited-Dividend Law was repealed in 1992, entities formed pursuant to the statute were not affected by said repeal, and the definitions set forth therein remained applicable to such entities.

28. Plaintiff supplied the aforementioned utilities and services to the Apartments from inception through 2014.

29. Consequently, as applied to the Project, the foregoing definition in the Limited-Dividend Law created a statutory exclusion (the "Statutory Exclusion") deducted annually from the tax base (i.e., *gross shelter rents*) upon which Plaintiff's annual PILOT payment was calculated.

### THE FINANCIAL ADJUSTMENT FACTOR

30. The PILOT Agreement was amended on or about October 18, 1982 (the "PILOT Amendment"), primarily in response to a HUD-related subsidy known as the Financial Adjustment Factor (the "FAF"). Annexed hereto as **Exhibit F** is a true and correct copy of the PILOT Amendment.

31. In relevant part, the PILOT Amendment created a contractual exclusion (the "FAF Contractual Exclusion") from the definition of "gross shelter rents" equal to "that portion of the annual gross shelter rents attributable to the [FAF]." See PILOT Amendment (Ex. F), at p. 1.

32. The term "FAF" as used in 1982 constituted an additional HUD subsidy that was "necessary in light of current high interest rates." Id.

33. Conversely, in or about 1993, the term "FAF" was used in the context of significant project-related savings realized by HUD as a result of nationwide debt refinancing in a low interest rate economic climate. Annexed hereto as **Exhibit G** is a true and correct copy of a "FAF Refunding Agreement" executed in 1993. Id.

34. As set forth in the FAF Refunding Agreement, HUD agreed to share fifty percent (50%) of said savings with defendant Plainfield (the "FAF Savings"). Id.

35. Consequently, all FAF payments remitted by HUD to the Finance Corp were fully

7

excludable from "gross shelter rents" for purposes of calculating Plaintiff's annual PILOT payment. See FAF Refunding Agreement (Ex. G); PILOT Amendment (Ex. F).

### Operation of the Project

36. Upon completion of the construction and development phases of the Project, HAP, as managing agent for Plaintiff, began renting the apartment units.

37. Per the terms of the Management Agreement and a pledge made by the Partnership during implementation stage of Project Funding Mechanism, HAP was required to remit all revenue from the Project and the Apartments, including all rental proceeds, directly to the Trustee. See Management Agreement (Ex. C), at p. 15.

38. The Trustee, in turn, was required to place the transferred proceeds into various "funds," including a "Tax Payment Fund" established, in part, to satisfy the Partnership's PILOT obligations. See Trust Agreement (Ex. D), at pp. 50-53.

39. With respect to the calculation of PILOT payments, HAP was required to engage a certified public accountant to prepare annual financial statements for submission to defendant Plainfield. See PILOT Agreement (Ex. E), at pp. 2-3.

40. Defendant Plainfield then calculated the PILOT amount due, notified HAP of such amount, and HAP, in turn, requisitioned the Trustee to satisfy Plaintiff's PILOT obligations from the Tax Payment Fund.

41. Consequently, Plaintiff had absolutely no involvement in the PILOT payment process pursuant to the payment mechanism concocted by defendant Plainfield by and through its instrumentality, HAP.

42. Under the parties' applicable governing documents, Plaintiff was essentially powerless to review and/or challenge the PILOT payment process.

43. Moreover, even if Plaintiff was entitled to object or otherwise exert control over

this process, Plaintiff had absolutely no reason to do so in light of the protections for Plaintiff which arise based on the parties' express and implied duties to one another under the various governing instruments, the nature of the project, and the annual issuance of certified financial statements.

44. In recognition of the fact that Plaintiff had no right to monitor and/or control this payment process (as well as most other payment processes), the Trust Agreement incorporated a macro-level, expenditure-review mechanism for Plaintiff's protection in the form of an annual budget that defendant Trustee was required to annually prepare and present to Plaintiff, and thereafter obtain approval of said budget from Plaintiff (the "Budget Obligation").  See Trust Agreement (Ex. D).

45. Unless and until defendant Trustee took the necessary steps to satisfy its Budget Obligation, defendant Trustee was expressly prohibited from remitting any payment of any kind on behalf Plaintiff.  See Trust Agreement (Ex. D).

46. Defendant Trustee failed to satisfy its Budget Obligation in most, if not all, years from inception of the Project through 2014.

47. During this time, Plaintiff placed numerous requests with defendant Trustee for satisfaction of defendant Trustee's Budget Obligation.

48. Despite its Budget Obligation failure, and in spite of Plaintiff's numerous demands for satisfaction thereof, defendant Trustee remitted numerous payments to numerous vendors on behalf of Plaintiff, including the annual PILOT payments that were improperly calculated and collected by defendant Plainfield.

### *OVERCHARGES*

49. From inception through 2014, the annual PILOT payment calculation was conducted incorrectly by Defendants.

50. In particular, Defendants completely ignored the Statutory Exclusion from the definition of "gross shelter rents" (relating to utilities, garbage removal, etc.) in determining the annual PILOT payments.

51. Moreover, Defendants also failed to recognize the FAF Contractual Exclusion from the definition of "gross shelter rents" in determining Plaintiff's annual PILOT payments.

52. Based on a review of the Partnership's financial statements, Plaintiff was harmed in an amount of no less than $500,000, including interest, as a result of Defendants' failure to recognize the Statutory Exclusion.

53. Based on a review of the Partnership's financial statements, Plaintiff was harmed in an amount of no less than $350,000, including interest, as a result of Defendants' failure to recognize the FAF Contractual Exclusion.

54. Conversely, at the same time Defendants' misconduct in this regard caused significant harm to the Partnership, such misconduct also bestowed a direct, dollar-for-dollar windfall upon defendant Plainfield.

## Transfer of the Project

55. In 2013 the principals of the Partnership finalized a deal whereby ownership of the Project/Apartments was to be transferred to a third party (the "Transfer") better-suited to own and operate the Apartments.

56. Given the heavily-regulated nature of the Project, numerous approvals were required in order to effectuate the Transfer.

57. However, upon approaching city officials to obtain said approvals in September of 2013, Plaintiff was instructed to wait until after defendant Plainfield's 2013 elections concluded and the mayor-elect took office before seeking approvals.

58. Plaintiff therefore waited patiently for several months before renewing its request

for approvals.

59. Notwithstanding, Defendants consciously decided to undertake a course of conduct whereby Defendants unlawfully discriminated against Plaintiff and acted in bad faith by conditioning grant of approvals on Plaintiff's performance .

### *DEMAND FOR MODIFICATION TO EXISTING PILOT AGREEMENT*

60. Seizing upon the inherent leverage created by the approval scheme, defendant Plainfield first conditioned approval on Plaintiff's acquiescence to modify the existing PILOT Agreement on terms substantially better to Defendant Plainfield.

61. In particular, Defendant Plainfield unlawfully exacted a ten percent (10%) PILOT payment percentage, thereby significantly increasing the existing 6.28% which the parties agreed would apply until the year 2030.

62. Left with no choice but to submit to defendant Plainfield's demand, the Partnership was damaged in an amount no less than $600,000, including interest, in the form of a reduced purchase price paid by the transferee.

63. This reduced purchase price became necessary solely as a result of the increased PILOT percentage.

### *DEMAND FOR PAYMENT OF PURPORTED PILOT DEFICIENCY*

64. Moreover, Plaintiff first learned of the more than thirty years of incorrect PILOT miscalculations described above when it received a demand from defendant Plainfield on May 29, 2014 for delinquent PILOT payments of $109,897.

65. After several communications between the parties, on June 10, 2014, defendant Plainfield acknowledged certain inaccuracies in their initial calculation, and therefore reduced their demand to $55,850.

66. Similarly, after additional communications, defendant Plainfield further reduced

their demand to $41,920.18 on or about June 26, 2014.

67. During the course of the aforementioned communications, Plaintiff discovered the incorrect PILOT calculations and immediately notified defendant Plainfield thereof.

68. Defendant Plainfield refused to acknowledge its miscalculation, and therefore refused to redress the significant harm imposed on Plaintiff as a result thereof.

69. Plaintiff reached out to defendant Plainfield's mayor, city manager and corporation counsel on multiple occasions regarding this precise issue, but defendant Plainfield maintained its position in refusing to even acknowledge its miscalculations.

70. Plaintiff even contacted New Jersey state officials regarding its interpretation of the definition of "gross shelter rents," and said state officials agreed with Plaintiff.

71. Despite presenting this information to defendant Plainfield, defendant still maintained its position in refusing to acknowledge its PILOT miscalculations.

### *DEMAND FOR POSTING OF PILOT ESCROW*

72. The Transfer was scheduled to close on July 2, 2014.

73. As of June 27, 2014, the PILOT miscalculation issue remained open, and served as the sole remaining issue which could delay the closing.

74. In this regard, defendant Plainfield demanded the establishment of an escrow fund with respect to the alleged $41,920.18 PILOT delinquency (the "PILOT Escrow").

75. Once again, due to the nature of the parties' relationship, Plaintiff had no option but to submit to defendant Plainfield's demand.

76. Upon expiration of the term of the PILOT Escrow in September 2014, defendant Plainfield unlawfully obtained the escrowed funds, plus interest.

77. At all relevant times, Defendants had an obligation to ensure Plaintiff's PILOT

12

payments were properly calculated, charged and collected.

78. Despite having direct knowledge of the aforementioned exclusions, Defendants refused to apply the exclusions in the PILOT formula to the detriment of Plaintiff for more than thirty (30) years.

79. Defendants received a direct pecuniary benefit by overcharging and overcollecting the PILOT payments.

80. Defendants willfully violated numerous provisions of the PILOT Agreement and Trust Agreement for the purpose of concealing their improper conduct.

## COUNT ONE – BREACH OF CONTRACT

81. Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 80 of this Complaint as though set forth fully herein.

82. Defendants are signatories to, obligated under, and bound by the various governing instruments executed by the parties, including but not limited to the PILOT Agreement, the FAF Refunding Agreement and the Trust Agreement. .

83. Plaintiff fully satisfied its obligations under all applicable governing instruments executed by the parties.

84. Defendants breached the terms of these applicable contractual agreements.

85. Defendants' breaches caused the PILOT overpayments.

86. As a direct and proximate result of Defendants' breaches, Plaintiff sustained damages consisting of substantial PILOT overpayments over the course of several decades.

**WHEREFORE**, Plaintiff respectfully requests that the Court rule in Plaintiff's favor and against Defendants by (a) awarding compensatory damages and incidental damages, with statutory interest thereon, to Plaintiff in an amount to be determined at trial or otherwise; (b) awarding Plaintiff its attorneys' fees and costs of suit; and (c) for such other further relief as the

Court deems just and proper.

### COUNT TWO – VIOLATION OF 42 U.S.C. § 1983
### (against Defendant Plainfield)

87. Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 86 of this Complaint as though set forth fully herein.

88. Defendant Plainfield is a municipality acting under color of law, as defined in 42 U.S.C. § 1983.

89. Plaintiff, its general partners and limited partners are all citizens of the United States and/or are subject to the jurisdiction thereof.

90. Defendant Plainfield acted in bad faith by willfully inflating Plaintiff's PILOT payments.

91. In its improper inclusion of the statutory and contractual exclusions in its charges to Plaintiff for PILOT payments, Plainfield has deprived Plaintiff, as well as Plaintiff's general and limited partners, of their substantive due process rights under the Constitution of the United States of America.

92. Based upon Plainfield's knowing deprivation of Plaintiff's rights, privileges and immunities secured by the United States Constitution, Plaintiff is entitled to redress pursuant to 42 U.S.C. § 1983.

93. On each occasion that Defendants improperly calculated, processed, remitted and/or collected PILOT payments, Defendants had knowledge of the statutory and contractual exclusions to the PILOT formula.

94. Despite Defendants' notice of the same, Defendants knowingly and intentionally ignored the exclusions in violation of Plaintiff's rights under the PILOT Agreement without notifying Plaintiff that it was doing so.

95. Plaintiff reasonably relied upon the provisions in the PILOT Agreement stating

that it would tender annual PILOT payments to defendant Plainfield equal to 6.28% of "gross shelter rents" in lieu of property taxes which, by law, were not to include the cost of utilities, etc.

**WHEREFORE**, Plaintiff respectfully requests that the Court rule in Plaintiff's favor and against Defendant Plainfield by (a) awarding statutory, compensatory, incidental and punitive damages, with interest thereon, to Plaintiff in an amount to be determined at trial or otherwise; (b) awarding Plaintiff its attorneys' fees and costs of suit; and (c) for such other further relief as the Court deems just and proper.

## **COUNT THREE – CIVIL RICO**

96. Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 95 of this Complaint as though set forth fully herein.

97. Defendant Plainfield's conduct constitutes a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*.

98. Defendant Plainfield received income, money and/or items of value by virtue of the fraudulent handling and concealment of the improper PILOT payments.

99. Defendant Plainfield's fraudulent handling and concealment of the improper PILOT payments for a period of approximately thirty years constitutes a pattern of racketeering activity as defined under RICO.

100. Defendant BNY Mellon, defendant Plainfield, and Plainfield's instrumentalities constitute a RICO enterprise which affects interstate commerce.

101. The income received by defendant Plainfield through its unlawful conduct was invested in the enterprise, and said enterprise affected foreign commerce by deterring similarly situated developers from HUD-qualifying housing projects.

102. As a result of Defendant Plainfield's fraudulent conduct, Plaintiff was denied the benefit of substantial sums of money for a substantial period of time, thereby inhibiting

Plaintiff's capabilities with respect to the Property and contributing to disputes among Plaintiff's partners regarding financial decisions.

**WHEREFORE**, Plaintiff respectfully requests that the Court rule in Plaintiff's favor and against Defendants by (a) awarding statutory, compensatory, incidental and punitive damages, with interest thereon, to Plaintiff in an amount to be determined at trial or otherwise; (b) awarding Plaintiff its attorneys' fees and costs of suit; and (c) for such other further relief as the Court deems just and proper.

### COUNT FOUR – UNJUST ENRICHMENT
### (against Defendant Plainfield)

103.  Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 102 of this Complaint as though set forth fully herein.

104.  Defendants' misconduct in improperly charging, processing, remitting and/or collecting inflated PILOT payments simultaneously injured Plaintiff and unjustly enriched defendant Plainfield.

105.  Retention of this benefit by defendant Plainfield would be inequitable in light of the fact that defendant Plainfield is not legally entitled thereto, and defendant Plainfield used fraudulent and deceptive means to perpetuate Plaintiff's injuries.

**WHEREFORE**, Plaintiff respectfully requests that the Court rule in its favor (a) ordering disgorgement from defendant Plainfield of the amounts by which defendant Plainfield was unjustly enriched; (b) awarding compensatory damages and incidental damages, with statutory interest thereon; (c) awarding attorneys' fees and costs of suit; and (d) for such other further relief as the Court deems just and proper.

### COUNT FIVE – FRAUD
### (against Defendant Plainfield)

106.  Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1

16

through 105 of this Complaint as though set forth fully herein.

107. On each occasion that Defendant Plainfield calculated, processed and collected PILOT payments, defendant Plainfield had knowledge of the statutory and contractual exclusions to the PILOT formula.

108. Despite this knowledge, Defendants knowingly and intentionally failed to account for said exclusions, thereby resulting in substantial overcharges to Plaintiff.

109. Plaintiff reasonably relied upon the provisions in the PILOT Agreement stating that annual PILOT payments tendered to defendant Plainfield would equal to 6.28% of "gross shelter rents" in lieu of property taxes which, by law, were not to include the cost of utilities, etc.

110. At all relevant times, Plainfield intended for Plaintiff to rely upon the applicable provisions of the PILOT Agreement to Plaintiff's detriment.

111. As a result of defendant Plainfield's fraudulent conduct and knowing violations of applicable law, Plaintiff suffered financial harm.

**WHEREFORE**, Plaintiff respectfully requests that the Court rule in Plaintiff's favor and against defendant Plainfield by (a) awarding compensatory damages, incidental damages and punitive damages, with interest thereon, to Plaintiff in an amount to be determined at trial or otherwise; (b) awarding Plaintiff its attorneys' fees and costs of suit; and (c) for such other further relief as the Court deems just and proper.

### COUNT SIX – BREACH OF FIDUCIARY DUTY
**(against Defendant BNY MELLON)**

112. Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 111 of this Complaint as though set forth fully herein.

113. Defendant Trustee owed a fiduciary duty to Plaintiff by virtue of the various governing instruments executed by the parties.

114. Defendant Trustee's fiduciary duty to Plaintiff extended to defendant Trustee's annual remission of funds to satisfy Plaintiff's PILOT liability.

115. Defendant Trustee breached and violated the fiduciary duty it owed to Plaintiff by failing to satisfy its Budget Obligation.

116. Defendant Trustee breached and violated the fiduciary duty it owed to Plaintiff in failing to verify the accuracy of the PILOT liability assessed by defendant Plainfield prior to remitting payments to defendant Plainfield to satisfy such liability.

117. Defendant Trustee breached and violated the fiduciary duty it owed to Plaintiff by remitting payments to defendant Plainfield prior to satisfying its Budget Obligation.

118. Defendant Trustee breached and violated the fiduciary duty it owed to Plaintiff by remitting PILOT payments to defendant Plainfield in amounts inconsistent with, and in violation of, the PILOT Agreement.

**WHEREFORE**, Plaintiff respectfully requests that the Court rule in its favor and against defendant BNY Mellon by (a) awarding compensatory, reliance, incidental and/or punitive damages, with interest thereon, to Plaintiff in an amount to be determined at trial or otherwise; (b) awarding Plaintiff its attorneys' fees and costs of suit; and (c) for such other further relief as the Court deems just and proper.

### COUNT SEVEN – NEGLIGENCE
**(against Defendant BNY MELLON)**

119. Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 118 of this Complaint as though set forth fully herein.

120. Defendant Trustee owed a duty to Plaintiff to ensure all payments remitted on Plaintiff's behalf were calculated properly.

121. Defendant Trustee breached and violated this duty by negligently remitting

PILOT payments to defendant Plainfield in amounts inconsistent with, and in violation of, the PILOT Agreement.

122.    Defendant Trustee's negligent breach of this duty resulted in, and was the proximate cause of, the aforementioned PILOT overpayments.

123.    Plaintiff sustained damages as a consequence of defendant Trustee's negligent conduct.

**WHEREFORE**, Plaintiff respectfully requests that the Court rule in its favor and against defendant BNY Mellon by (a) awarding compensatory, reliance, incidental and/or punitive damages, with interest thereon, to Plaintiff in an amount to be determined at trial or otherwise; (b) awarding Plaintiff its attorneys' fees and costs of suit; and (c) for such other further relief as the Court deems just and proper.

## COUNT EIGHT – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

124.    Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 123 of this Complaint as though set forth fully herein.

125.    Defendants owed Plaintiff a duty of good faith and fair dealing as implied terms of the various governing agreements applicable to this matter.

126.    In accordance with this duty, Defendants were obligated to refrain from charging, processing, remitting, collecting and/or retaining improper PILOT payments from Plaintiff.

127.    In accordance with this duty, Defendants were obligated to remedy the PILOT overpayments upon receiving notice thereof.

128.    In accordance with this duty, defendant Plainfield is and was, at all relevant times, obligated to refrain from retaining the PILOT funds.

129.    Defendants breached the aforementioned implied duties by charging, processing, remitting, collecting and/or retaining the PILOT overpayments.

**WHEREFORE**, Plaintiff respectfully requests that the Court rule in Plaintiff's favor and against Defendants by (a) awarding compensatory damages, incidental damages and punitive damages, with interest thereon, to Plaintiff in an amount to be determined at trial or otherwise; (b) awarding Plaintiff its attorneys' fees and costs of suit; and (c) for such other further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands:

a) Judgment in the amount of all improper PILOT payments made by Plaintiff to Defendant Plainfield;

b) All applicable statutory, compensatory, incidental and punitive damages;

c) All attorneys' fees and costs incurred as a result of the present action;

d) Pre and post-judgment interest; and

e) Any and all other relief that this court deems just, proper and equitable.

**SANDELANDS EYET LLP**
*Attorneys for Plaintiffs LCA GP, LLC, LCA LP, LLC and Anodes Partners LLC (collectively f/k/a Liberty Community Associates LP)*

Dated:  May 17, 2018        By:    */s/ Matthew T. Eyet*
                                   Matthew T. Eyet, Esq.
                                   1545 U.S. Highway 206, Suite 304
                                   Bedminster, NJ 07921
                                   meyet@se-llp.com
                                   (908) 470-1200